45 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Jeffrey R. LAYNE; Madonna Layne, Plaintiffs-Appellants,
v.
MONTGOMERY WARD & COMPANY, INCORPORATED, Comprehensive
Health Care Plan, Defendants-Appellees.
 No. 94-1549.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1994.
Decided Dec. 30, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, District Judge. (CA-92-53-C).
 ARGUED: Ronnie Lee Tucker, Fairmont, WW, for appellants. Susan Gail Yurko, FURBEE, AMOS, WEBB & CRITCHFIELD, Fairmont, WV, for appellees.
 N.D.W.Va.
 AFFIRMED.
 Before WILKINS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 Jeffrey and Madonna Layne, husband and wife, appeal from the district court's grant of summary judgment dismissing their suit against the Montgomery Ward & Co., Inc. Comprehensive Health Care Plan (Plan). The Laynes contend that the Plan's refusal to process their claim for benefits unless they signed a subrogation agreement violated the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001 et seq. (ERISA). We agree with the district court that the Plan acted within its discretion and affirm the judgment below.
 
 I.
 
 2
 The following facts are not in dispute. Madonna Layne was, at all times here relevant, a full-time employee of Montgomery Ward Co., Inc. and a participant in its employee welfare benefit plan. Jeffrey Layne was a beneficiary under his wife's policy. The Plan provided that it would pay up to eighty percent (80%) of certain medical costs incurred by covered beneficiaries, with the proviso that it could require beneficiaries to reimburse the Plan out of monies recovered from third parties as compensation for the same injury or illness.[1] The Summary Plan Description provided to Ms. Layne at the time of her enrollment[2] specifies that "The Health Care Plan Does Not Cover":
 
 
 3
 Treatment of any illness, disease, or injury that is, or is expected to become, the subject of a civil suit. Health Care benefits can be paid under these circumstances only if the plan participant or covered dependent signs a legally binding document (called a "subrogation agreement") to reimburse the plan for these benefits out of any money collected as a result of legal action.
 
 
 4
 JA 71-72.
 
 
 5
 On November 16, 1988, Mr. Layne was injured in an automobile accident with a negligent third party. As a result of Mr. Layne's sub stantial injuries, the Laynes have incurred medical expenses in excess of $135,000. (JA 184-85) The Laynes timely submitted a claim for payment to the Plan. After determining that the Laynes' claim implicated the Plan's subrogation rights, the Plan's administrating agent, Health Cost Controls ("Administrator"), informed the Laynes that
 
 
 6
 Mr. Layne's claim was excluded from coverage, but that the Plan would consider the claim provided that the Laynes executed a subrogation agreement supplied by the Administrator. JA 11-12, 53-55. Under the terms of the agreement, Mr. Layne would "agree to reimburse Health Cost Controls, for any benefits which I may receive under said plan for charges incurred as a result of[the November 1988 injury] out of any recovery by settlement, judgement or otherwise from any person or organization responsible therefore, or from such person's or organization's insurance."[3]
 
 
 7
 The Laynes refused to sign the agreement. The Administrator then sent the Laynes a second form to sign. This form, styled a "Reimbursement Agreement," provided in part:
 
 
 8
 the undersigned hereby agrees to reimburse and pay promptly to HEALTH COST CONTROLS, an amount not to exceed the aggregate amount of benefits paid or to be paid to me or on my behalf under said Plan for charges incurred as a result of injury or disease sustained by me, out of any recovery I may make for any damages collected, whether by settlement, judgment or otherwise, from any party for said injury or disease.
 
 
 9
 ...
 
 
 10
 .... The undersigned hereby authorizes Health Cost Controls to have access to my automobile insurance policy and any payments made thereunder.
 
 
 11
 JA 56. The Laynes again refused to sign.
 
 
 12
 In early August 1989, the Laynes' counsel notified the Administrator that Mr. Layne received a monetary settlement from the tortfeasor's insurance company and from Mr. Layne's own insurer (pursuant to an underinsured motorist provision) for approximately $200,000 in the aggregate. (Later investigation by the Administrator revealed that approximately $107,000 of the total came from the tortfeasor's insurer.) The Laynes' counsel also represented that Mr. Layne's medical expenses had exceeded $96,000 and were still accumulating. The Administrator offered to accept $66,666 in full satisfaction of the Laynes' reimbursement/subrogation obligation. The Laynes refused to sign the agreement but did not otherwise reply to the Administrator's offer. On May 8, 1990, the Administrator informed the Laynes that it was closing the file on Mr. Layne's November 1988 accident and would make no payments under the Plan. JA 178.
 
 
 13
 Thereafter the Laynes brought suit in West Virginia state court seeking to compel the Plan to pay Mr. Layne's medical expenses in accordance with the policy and praying for consequential and punitive damages. In July 1992, the defendant removed the case to federal district court in the Northern District of West Virginia. In January 1993, the Laynes amended their complaint to state causes of action under ERISA, the essence of which was to allege that
 
 
 14
 neither the official ERISA Plan nor the [SPD] contained the requirement that plaintiffs, in order to receive benefits, had to sign documents agreeing to turn over any money received from their automobile insurer and agreeing to execute unknown documents to facilitate defendant's reimbursement efforts.
 
 
 15
 JA 13 (Amended Complaint, at p 13). Defendant moved for summary judgment on the ground that the Administrator did not act arbitrarily and capriciously in closing the Laynes' claim upon their refusal to sign the subrogation agreement. The district court granted the motion and dismissed the Laynes' complaint.
 
 II.
 
 16
 The gist of the Laynes' contention on appeal is that the district court erred as a matter of law in holding that the terms of the Plan authorized the Administrator to require the Laynes to reimburse the Plan out of monies recovered from their own insurer. We disagree. The argument is based on a false factual premise--namely that the Administrator did in fact refuse to process the Laynes' claim absent their agreement to tender to the Plan monies recovered from their own insurer.
 
 
 17
 The initial "Subrogation Agreement" which the Administrator requested that the Laynes sign as a precondition to having their claim considered referred only to monies received by the Laynes from the third party responsible for the injury or from that party's insurer. See supra text accompanying note 3. Additionally, the $66,666 that the Administrator offered to accept in full satisfaction of the subrogation clause was well under the amount that the Laynes received from the tortfeasor; the Plan did not seek to touch the nearly $100,000 that the Laynes received from their own insurer. Although it is true that some language in the "Reimbursement Agreement" apparently would have required the Laynes to tender to the Plan monies received from their own insurer, see supra, at 2-3, the Laynes easily could have avoided such an obligation either by signing the "Subrogation Agreement" (which they had received earlier) or by agreeing to the $66,666 reimbursement offer (which was extended later). There is no evidence from the record that the Laynes sought to convey to the Administrator that the only monies they were unwilling to subrogate were those recovered under their own insurance policy.
 
 
 18
 There is, therefore, no genuine issue as to whether the Administrator conditioned its payment to the Laynes under the terms of the Plan on the Laynes' commitment to pay over to the Plan money recovered from the Laynes' own insurer.[4] It did not. Consequently, the Laynes' concession that the language in both the Official Plan and the SPD authorized the Administrator to require participants to agree to subrogate to the Plan monies received from third party tortfeasors (and such tortfeasors' insurers), see Appellants' Brief, at 9, 13, is fatal to their cause of action.
 
 III.
 
 19
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Article 15.4 of the official Plan document provides:
 Subrogation and Right of Reimbursement In the event a claim for benefits under the Comprehensive Health Care Plan involves an injury or illness which is or can be expected to become the subject of litigation between a Participant or Covered Dependent and a third party, the Administrative Director may
 (a) require the Participant or Covered Dependent to subrogate to the Trust his right of recovery from said third party up to the amount paid by the Trust; or
 (b) require the Participant or Covered Dependent to execute a binding agreement that if he obtains a recovery either by court decree or out-of-court settlement, he shall reimburse the Trust up to the amount said recovery equals the benefits paid by the Trust pursuant to the Plan.
 JA 171.
 
 
 [2]
 The Laynes acknowledged in their pleadings that Montgomery Ward furnished Ms. Layne with a copy of the SPD before she agreed to enroll in the Plan. See Amended Complaint, at paragraphs 4, 7. They sought to retract that admission, however, after the Plan moved for summary judgment. In their Supplemental Response In Opposition to Defendant's Motion for Summary Judgment, and in an accompanying affidavit, the Laynes contended that Ms. Layne was not given an SPD or otherwise informed of the Plan's subrogation rights until after Mr. Layne's accident. The Laynes attributed the conflicting language in their amended complaint to "a proofreading oversight."
 Despite counsel's effort to resurrect this assertion at oral argument, we hold the Laynes bound to the admission in their complaint for two principal reasons. First, even if the Laynes' Supplemental Response were to be construed as a motion to amend their complaint, the district court could properly have denied the motion given its eleventh-hour character and facial implausibility. Second, even if the district court abused its discretion under Rule 15(a) in refusing the Laynes leave to amend, the Laynes waived their right to appeal such an error by failing to raise it in their briefs.
 
 
 [3]
 The agreement also provided that:
 The undersigned further agrees to execute instruments and papers, furnish information and assistance, and take other necessary and related action as Health Cost Controls may require to facilitate the subrogation provision under the Plan.
 
 
 [4]
 We emphasize that we need not and do not decide whether, as a matter of either contract interpretation or public policy, the Plan Administrator may have conditioned payment to the Laynes upon their agreement to subrogate to the Plan monies recovered from their own insurer